**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY J. PROL, ESQUIRE
Attorney ID No. 319524
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0834
tim@dereksmithlaw.com
*Attorneys for Plaintiff, Miracalette Parish*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| MIRACLETTE PARISH | : | |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | Civil Action No. . 2:23-CV-1485 |
| COLDSPARK MEDIA, INC.; | : | |
| COLDSPARK DIGITAL, INC.; | : | |
| RYAN REYNOLDS (individually) | : | |
| | : | |
| Defendants | : | Jury Trial Demanded |

_____

### THIRD AMENDED CIVIL COMPLAINT[1]

PLAINTIFF, Miraclette Parish, by and through her attorneys, The Derek Smith Law Group, PLLC, hereby brings this civil action pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* ("Title VII")*,* the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et. seq.*, and seeks relief from discrimination, harassment, disparate treatment, hostile work environment, and retaliation related to PLAINTIFF's employment with Defendants, COLD SPARK MEDIA, INC.; COLDSPARK DIGITAL, INC.; RYAN REYNOLDS (individually). PLAINTIFF alleges and avers in support thereof:

---

[1] The parties do not object to filing of the Third Amended Complaint without leave of Court.

## NATURE OF THE CASE

1.      This action arises out of the unlawful discrimination, hostile work environment, and retaliation by Defendants against PLAINTIFF on the basis of her sex and gender.

2.      PLAINTIFF brings this action charging that Defendants violated PLAINTIFF's rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 18 U.S.C.A. §§ 1591, 18 PA CSA 3012, the Pennsylvania Human Relations Act, as amended, 42 U.S. §§ 951, *et. seq.* ("PHRA"), seeking damages to redress the injuries PLAINTIFFs suffered as a result of being discriminated against by her employer on the basis of her sex and gender and in retaliation for her opposition and reporting the unlawful behavior.

## PARTIES

3.   PLAINTIFF MIRACLETTE PARISH (hereinafter also referred to as "PLAINTIFF") is an adult female who resides in the Commonwealth of Virginia, who at all times relevant, worked for Defendants within the Commonwealth in of Pennsylvania.

4.      At all times material, Defendant, COLD SPARK MEDIA, INC., (hereinafter also referred to as "Defendant COLD SPARK MEDIA"), was and still is a miscellaneous corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania with its principal place of business located at 307 Fourth Avenue, 14th Floor  Pittsburgh Allegheny, PA 15222.

5.      At all times material, Defendant, COLDSPARK DIGITAL, INC., (hereinafter also referred to as "Defendant COLDSPARK DIGITAL"), is registered with the State of Pennsylvania as a Domestic Business Corporation with a listed address as "Steptoe & Johnson PLLC" with its

principal place of business located at 307 Fourth Avenue, 14th Floor  Pittsburgh Allegheny, PA 15222.

6.      Defendant RYAN REYNOLDS (hereinafter also referred to as "Defendant REYNOLDS" or Defendant RYAN REYNOLDS) was at all times relevant the Vice President of Defendant COLD SPARK MEDIA.

7.      Defendant REYNOLDS is a male who, upon information and belief, resides in Virginia.

8.      At all relevant times Defendant REYNOLDS maintained supervisory authority over PLAINTIFF.

9.      At all times material, Defendants CSM and COLDSPARK DIGITAL were the joint employers of PLAINTIFF.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this matter as it involves a Federal Question, 28 U.S.C. §1331, and the Court maintains supplemental jurisdiction, 28 U.S.C. §1367, over the state law causes of action.

11.      Venue is appropriate before this Court as Defendants reside in the Western District of Pennsylvania and all actions and omissions giving rise to this litigation occurred in the Western District of Pennsylvania.

12.      Furthermore, PLAINTIFF has exhausted administrative remedies by having filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), and PLAINTIFF having received a Notice of Right to Sue.

## MATERIAL FACTS

13.     On October 25, 2021, Defendants hired PLAINTIFF, Miraclette Parish, as an Account Manager.

14.     At all times relevant,  PLAINTIFF worked in Pittsburgh, Pennsylvania.

15.     PLAINTIFF's letter offering employment references "Coldspark," which is a fictitious trade name which covers operations of both "Cold Spark Media" and "Coldspark Digital."

16.     Coldspark provides political consulting, public affairs, digital strategy, media production & advertising, and branding & graphic design services.

17.     As used herein, the terms "Coldspark," "Cold Spark Media," and "Coldspark Digital" are used interchangeably and refer to the employer of PLAINTIFF and all individual Defendants.

18.     While PLAINTIFF was employed with Coldspark she performed work for clients which were processed or listed under the Cold Spark Media as well as the Coldspark Digital company names and PLAINTIFF's understanding was that the Cold Spark Media and Coldspark Digital names were used interchangeably.

19.     Initially as an Account Manager PLAINTIFF was in charge of delegating and managing staff members who would implement the clients' email marketing, ads, and coordination of efforts and workflow, however, PLAINTIFF ultimately became responsible for performing the work herself in addition to coordinating tasks for the clients.

20.     When PLAINTIFF was hired by Coldspark it was made clear in the offer letter that HARGRAVE was PLAINTIFF's direct report supervisor.

21.     HARGRAVE was a Vice President of Coldspark Digital and/or Coldspark Media and it was clear from the organizational chart as well as PLAINTIFF's offer letter that he was one of PLAINTIFF's supervisors who had the authority to hire, fire, and alter the terms and conditions of PLAINTIFF's employment.

22.     While PLAINTIFF was employed with Coldspark, HARGRAVE was consistently directing PLAINTIFF in her day-to-day operations, assigning tasks, and overseeing PLAINTIFF's work efforts.

23.     REYNOLDS was a Vice President on the Coldspark organizational chart at the same level as HARGRAVE.

24.     REYNOLDS' lateral position to HARGRAVE directly above PLAINTIFF on the organizational chart indicated that REYNOLDS also had the authority to hire, fire, and change the terms of PLAINTIFF's employment.

25.     PLAINTIFF understood that REYNOLDS was one of her direct supervisors and that she answered to him for several of PLAINTIFF's work tasks.

26.     Several of the clients PLAINTIFF was tasked with providing services for were clients which REYNOLDS was responsible for signing with Coldspark.

27.     Since those clients were originated by REYNOLDS, REYNOLDS was in charge of making sure that they were satisfied and that the work being done on their files was satisfactory.

28.     PLAINTIFF was required to report to REYNOLDS, take direction from REYNOLDS, and implement tasks assigned by REYNOLDS, implement directions provided by REYNOLDS, implement directives provided by REYNOLDS, and instructions assigned by REYNOLDS.

29.     Several times over the course of her employment PLAINTIFF had to go to REYNOLDS for approval related to client issues that needed to be solved.

30.     If PLAINTIFF had a client who she didn't know who the main point of contact was PLAINTIFF would ask REYNOLDS who would provide direction and guidance.

31.     If PLAINTIFF required additional background on one of REYNOLDS' clients PLAINTIFF would go to REYNOLDS who would provide same.

32.     Any issues that arose while PLAINTIFF was performing her duties regarding those clients who REYNOLDS was responsible for required PLAINTIFF to interface with REYNOLDS and receive his direction and/or approval for actions PLAINTIFF was going to take.

33.     On December 14, 2021, Defendants hosted a two-day company retreat and holiday party in Pittsburgh, Pennsylvania.

34.     On December 14, 2021, PLAINTIFF, her supervisor Tyler Hargrave, Coldspark Founding Partner Michael DeVanney, Defendant REYNOLDS, and PLAINTIFF'S coworker, Colin Simes, went to a restaurant.

35.     At the restaurant, the group was given a booth.  Defendant REYNOLDS sat next to PLAINTIFF in the booth.

36.     Later into the night, DeVanney and Hargrave left the restaurant, leaving Mr. Simes, Defendant REYNOLDS, and PLAINTIFF at the restaurant and were unaware and uninvolved with the following interaction.

37.     Immediately thereafter, Defendant REYNOLDS began touching PLAINTIFF'S knee underneath the table out of the view of Mr. Simes.

38.     At first, PLAINTIFF ignored the touching, as she simply thought Defendant REYNOLDS had accidentally touched her knee.   However, Defendant REYNOLDS then continued to rub PLAINTIFF'S knee and stroke her inner thigh.

39.     PLAINTIFF was in complete shock by Defendant REYNOLDS' unwanted sexual advances.

40.     Thereafter, Mr. Simes left the table to go to the restroom.   As soon as Mr. Simes got up from the table, Defendant REYNOLDS crept closer to PLAINTIFF in the booth and began rubbing PLAINTIFF'S back.  Defendant REYNOLDS only stopped rubbing PLAINTIFF'S back once Mr. Simes  returned to the booth from the restroom.

41.     However, as soon as Mr. Simes sat down in the booth, Defendant REYNOLDS resumed rubbing PLAINTIFF'S inner thigh, and then moved his hand to PLAINTIFF'S vagina and began fingering her vagina through her clothes.

42.     PLAINTIFF was mortified and visibly upset.

43.     Defendant REYNOLDS then asked PLAINTIFF why she looked upset.  Mr. Simes also asked if there was something wrong with PLAINTIFF.

44.     PLAINTIFF was so embarrassed and humiliated by Defendant REYNOLDS conduct that she was unable to say anything to DEFENDANT REYNOLDS and Mr. Simes.

45.     Thereafter, PLAINTIFF became overwhelmed by Defendant REYNOLDS inappropriate conduct that she asked they all go back to the hotel, and left the restaurant.

46.     Defendant REYNOLDS left Mr. Simes and PLAINTIFF to return to his home. PLAINTIFF and Mr. Simes began to walk to their hotel.

47.     Once Defendant REYNOLDS left, PLAINTIFF began crying and confided in Mr. Simes that Defendant REYNOLDS groped her, and fingered her vagina over her clothes right at the booth.

48.     When PLAINTIFF was able to calm herself down, she and Mr. Simes went to their respective hotel rooms for the night.

49.     The next morning, PLAINTIFF immediately reported to her supervisor Hargrave, Defendant REYNOLDS' inappropriate conduct and unwanted sexual advances at the restaurant the night before.  Despite the same, DEFENDANTS did not take any remedial action to remedy PLAINTIFF'S complaint.

50.     After REYNOLDS sexually assaulted and harassed PLAINTIFF she sought medical treatment for the psychological injuries and fallout from the sexual harassment she was subjected to at the hands of REYNOLDS and by extension and their subsequent inaction, the other Defendants.

51.     PLAINTIFF treats and/or has treated with the following providers for the psychological fallout from Defendants' unlawful actions, including REYNOLDS' sexual assault and harassment: MINOO PAKDAMAN, L.C.S.W., KARANDEEP K OTHEE, M.D.; KAREN MAKAR JEANNETTE, L.P.C., JESSICA GELFARB, L.C.S.W.; SOFIA CROWE, L.C.S.W.

52.     PLAINTIFF also understands that REYNOLDS also lives in the state of Virginia.

53.     Whenever PLAINTIFF sees anyone with bright red hair, which REYNOLDS has, it triggers her and reminds her of all of his harassing illegal conduct in full detail as if it was the day the conduct occurred.

54.     PLAINTIFF continues to have nightmares about REYNOLDS and these are things she has also discussed with her medical providers.

55.     REYNOLDS' sexual harassment and Defendants' illegal conduct has negatively impacted and ruined PLAINTIFF's relationships with friends and family and she is continually depressed because of his actions and these issues are also things PLAINTIFF has discussed with her medical providers.

56.     When PLAINTIFF reported REYNOLDS' sexually harassing conduct to her supervisor, he told PLAINTIFF that REYNOLDS was a "good guy," and having just been sexually assaulted by REYNOLDS, this made PLAINTIFF feel unheard and even more terrible.

57.     On December 16, 2022, PLAINTIFF returned to the office for her regular scheduled work shift.

58.     Later in the day, Defendant REYNOLDS came into the office.   Defendant REYNOLDS immediately sat down next to PLAINTIFF and stated that he has no recollection of anything from the night before.  PLAINTIFF got up from her workstation and went to attend a work meeting.

59.     Following the meeting, Defendant REYNOLDS was still lingering near PLAINTIFF'S workstation.

60.     PLAINTIFF felt so unsafe being around Defendant REYNOLDS in that office, that she gathered up her belongings and went back to her hotel room to finish her workday.

61.     Later that evening, while at the company holiday party, Defendant REYNOLDS approached PLAINTIFF.  PLAINTIFF simply walked away as she did not feel safe in Defendant REYNOLDS' presence.

62.     In or around January, Defendant COLD SPARK MEDIA'S partners wanted to have PLAINTIFF to travel to Washington, D.C. for a dinner.   The partners insisted that PLAINTIFF

have dinner with only one other partner, and DEFENDANT REYNOLDS.  The very individual that PLAINTIFF had reported for groping her vagina.

63.    PLAINTIFF was afraid for her safety and did not want to continue working in the hostile work environment to which she was subjected to.

64.    On January 28, 2022, PLAINTIFF'S working conditions were so abusive and hostile, that any reasonable person in PLAINTIFF's position would have resigned.

65.    Accordingly, PLAINTIFF was void free will.

66.    PLAINTIFF was constructively discharged from her employment due to Defendant's discrimination, harassment, and in retaliation for PLAINTIFF'S complaints of discrimination and harassment in the workplace.

67.    As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

68.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

69.    That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

70.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendants jointly and severally.

71.     PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

72.     PLAINTIFF claims that Defendants unlawfully discriminated against and harassed PLAINTIFF because of her gender and in retaliation for reporting unlawful conduct.

73.     PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF'S position as a result of the unlawful discrimination and retaliation.

74.     The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF's employment.

75.     The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

76.     PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

77.     PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.


**COUNT I**
**Disparate Treatment Sex Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.**
**(*PLAINTIFF v. Defendants COLD SPARK MEDIA, INC. and COLDSPARK DIGITAL,*** 
***INC.*)**

78.     PLAINTIFF repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

79.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

a.      "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

80.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(d) further provides that "it shall be an unlawful employment practice for an employer… controlling… training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide training."

81.     Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against PLAINTIFF with respect to her compensation, terms, conditions, training, and privileges of employment because of her sex.

82.     Defendants subjected PLAINTIFF to adverse tangible employment actions – defined as significant changes in PLAINTIFF's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing significant changes in her employment benefits.

83.     At all times material, PLAINTIFF was and is a woman.

84.     At all times material, Defendants had knowledge of PLAINTIFF's sex.

85.     At all times material, Defendants held supervisory authority over PLAINTIFF with respect to her employment.

86.  At all times material, Defendant COLD SPARK MEDIA and/or Defendant COLDSPARK DIGITAL authorized Defendant RYAN REYNOLDS and other employees to take tangible employment action against PLAINTIFF as employees of Defendant COLD SPARK MEDIA and/or Defendant COLDSPARK DIGITAL.

87.     As alleged herein, Defendants intentionally discriminated against PLAINTIFF with regard to the terms and conditions of her employment on the basis PLAINTIFF's membership in one or more protected classes.

88.     At all times material, Defendants' discriminatory conduct, included but not limited to Defendant REYNOLDS groping PLAINTIFF's vagina through her panties and all Defendants' subsequent conduct thereafter, was not welcomed by PLAINTIFF.

89.     At all times material, Defendants' conduct towards PLAINTIFF was intentionally based upon PLAINTIFF's membership in one or more protected classes.

90.     At all times material, PLAINTIFF's membership in one or more protected classes were motivating and/or determinative factors in Defendants' discriminatory conduct.

91.     Defendants cannot show any legitimate, nondiscriminatory reasons for its employment practices and any reasons proffered by Defendants for their actions against PLAINTIFF are pretextual.

92.     As alleged herein, Defendants' discriminatory and harassing actions towards PLAINTIFF because of his membership in one or more protected classes are unlawful employment practices in violation of the Civil Rights Act of 1964.

93.     Defendants' unlawful employment actions towards PLAINTIFF were intentional, willful, and made with reckless indifference to PLAINTIFF's federally protected civil rights.

94.     Defendants acted upon a continuing course of conduct.

95.     Defendant COLD SPARK MEDIA and Defendant COLDSPARK DIGITAL are vicariously liable for the unlawful employment actions by Defendant RYAN REYNOLDS against PLAINTIFF in the course and scope of her employment with Defendant COLD SPARK MEDIA and/or Defendant COLDSPARK DIGITAL.

96.     As a result of Defendants' unlawful discrimination in violation of Title VII, PLAINTIFF has suffered and continues to suffer physical, emotional, and financial harm.

97.     Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' unlawful actions towards PLAINTIFF were intentional, willful, and made with reckless indifference to PLAINTIFF's federally protected civil rights.

98.     As a result of Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' violations of Title VII, PLAINTIFF has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT II
### Hostile Work Environment in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq
### (*PLAINTIFF v. Defendants COLD SPARK MEDIA, INC. and COLDSPARK DIGITAL, INC.*)

99.     PLAINTIFF repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

100.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

b.      "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

101.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the PLAINTIFF's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the PLAINTIFF's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

102.    Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL and Defendant RYAN REYNOLDS, in his capacity as PLAINTIFF's supervisor, intentionally discriminated against PLAINTIFF in the terms and conditions of her employment on the basis of PLAINTIFF's sex.

103.    Defendant COLD SPARK MEDIA and/or Defendant COLDSPARK DIGITAL delegated to Defendant RYAN REYNOLDS the authority to control PLAINTIFF's work environment, and he abused that authority to create a hostile work environment.

104.    The conduct of Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS was sufficiently severe to alter the conditions of PLAINTIFF's employment.

105.    The conduct of Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS was sufficiently severe to create an abusive working environment.

106.    At all times material, Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' intentional, discrimination based on PLAINTIFF's sex was not welcomed by PLAINTIFF.

107.    At all times material, the intentional, discrimination based on PLAINTIFF's sex, gender identity, sexual orientation, race, and religion by Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS was so severe or pervasive that a reasonable person in PLAINTIFF's position would find PLAINTIFF's work environment to be hostile or abusive.

108.    At all times material, PLAINTIFF believed his work environment to be hostile or abusive as a result of Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' discriminatory conduct on the basis of PLAINTIFF's sex.

109.    The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of PLAINTIFF's employment.

110.    Defendant COLD SPARK MEDIA and/or Defendant COLDSPARK DIGITAL provided a futile avenue for complaint.

111.    Defendant COLD SPARK MEDIA and/or Defendant COLDSPARK DIGITAL retaliated against PLAINTIFF for her complaints.

112.    Defendant COLD SPARK MEDIA and/or Defendant COLDSPARK DIGITAL acted upon a continuing course of conduct.

113.    Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' unlawful actions towards PLAINTIFF was intentional, willful, and made with reckless indifference to PLAINTIFF's federally protected civil rights.

114.    As a result of Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' violations of Title VII, PLAINTIFF has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT III
### Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*
### *(PLAINTIFF v. Defendants COLD SPARK MEDIA, INC. and COLDSPARK DIGITAL, INC.)*

115.    PLAINTIFF repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

116.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

117.    As alleged herein, PLAINTIFF engaged in protected activity under Title VII including, but not limited to opposing and reporting Defendants' unlawful discriminatory employment practices.

118.    At all times material, PLAINTIFF acted under a reasonable, good-faith belief that PLAINTIFF's right to be free from discrimination in the workplace was being violated by Defendants' conduct.

119.    Defendants subjected PLAINTIFF to materially adverse employment actions subsequent to PLAINTIFF reporting discriminatory conduct, specifically but not limited to failing to take any corrective action against Defendant REYNOLDS, scheduling PLAINTIFF to have dinner with Defendant REYNOLDS and another individual despite PLAINTIFF complaining of Defendant REYNOLDS' groping of her vagina, culminating in Defendant's constructive termination of PLAINTIFF's employment on January 28, 2022.

120.    At all times material, PLAINTIFF's protected opposition activity was the determinative factor in some or all of Defendants' materially adverse actions against PLAINTIFF.

121.    At all times material, PLAINTIFF's protected opposition activity was the but-for cause of some or all of Defendants' materially adverse actions against PLAINTIFF.

122.    The temporal proximity between PLAINTIFF's protected activity and Defendants' decision to take materially adverse action against PLAINTIFF is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

123.    Defendants' materially adverse actions against PLAINTIFF in retaliation for PLAINTIFF's protected opposition activity were intentional, willful, and made with reckless indifference to PLAINTIFF's federally protected civil rights.

124.    Defendants' actions to take materially adverse employment actions against PLAINTIFF in retaliation for PLAINTIFF's protected opposition activity are unlawful employment practices in violation of Title VII.

125.    Defendants is vicariously liable for the unlawful actions of its employees or agents against PLAINTIFF in the course and scope of her employment with Defendants.

**126.**    As a result of Defendants' retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, PLAINTIFF has suffered and continues to suffer physical, emotional, and financial harm.

127.    Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' unlawful actions towards PLAINTIFF were intentional, willful, and made with reckless indifference to PLAINTIFF's federally protected civil rights.

128.    As a result of Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' violations of Title VII, PLAINTIFF has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

<u>**COUNT IV**</u>
**Intentional Infliction of Emotional Distress (IIED)**
***(PLAINTIFF v. Defendant RYAN REYNOLDS)***

129.    PLAINTIFF repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

130.    PLAINTIFF brings this claim against Defendant RYAN REYNOLDS in his individual capacity for intentional infliction of emotional distress ("IIED").

131.    To prove a claim of IIED, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. *Hooten v. Penna. College of Optometry*, 601 F.Supp. 1155 (E.D.Pa.1984); *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa.Super. 1997); Restatement (Second) of Torts § 46.

132.    Defendant RYAN REYNOLDS engaged in intentionally and recklessly harassed and inflicted emotional injury on PLAINTIFFs by subjecting her to the outrageous treatment beyond all bounds of decency by fingering her vagina through her panties among other things.

133.    Defendant RYAN REYNOLDS mentally, and physically abused PLAINTIFF and treated her in a demeaning and inferior manner, which no reasonable person could be expected to endure.

134.    As set forth above and as incorporated herein, PLAINTIFF sought treatment as a result of Defendant RYAN REYNOLDS' unlawful sexual harassment.

135.    As a direct and proximate result of these malicious and conscious wrongful actions, PLAINTIFF has sustained severe emotional distress, resulting in bodily and mental injury, and damages, including punitive damages, to be determined at trial.


## COUNT V
### Discrimination, Disparate Treatment, Hostile Work Environment
### Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, *et. seq*.
### (*PLAINTIFF v. Defendants COLD SPARK MEDIA, INC. and COLDSPARK DIGITAL, INC.*)

136.    PLAINTIFF repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

137.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice: (b) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or impendent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the service required.

138.    Defendants engaged in an unlawful discriminatory practice by discriminating against the PLAINTIFF because of PLAINTIFF's sex and gender.

139.    PLAINTIFF hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

140.    Defendant COLD SPARK MEDIA is an employer under the Pennsylvania Human Relations Act as it employs citizens of the Commonwealth of Pennsylvania, and also because Defendant resides in the Commonwealth.

141.    Defendant COLDSPARK DIGITAL is an employer under the Pennsylvania Human Relations Act as it employs citizens of the Commonwealth of Pennsylvania, and also because Defendant resides in the Commonwealth.

142.    Defendant RYAN REYNOLDS was a supervisor and/or manager employed by Defendant COLD SPARK MEDIA and/or Defendant COLDSPARK DIGITAL and compelled, coerced, and/or caused the violations of the Act alleged herein.

143.     PLAINTIFF is protected under the Pennsylvania Human Relations Act as she is an employee of an employer and is a member of a protected class by virtue of her sex.

144.     Defendants subjected PLAINTIFF to a harassing, hostile work environment and disparately treated PLAINTIFF on the basis of her protected class.

145.     As a direct and proximate result of Defendants' discrimination, harassment, and retaliation, PLAINTIFF has suffered loss of wages, including loss of back pay, loss of front pay, loss of amenities of employment and out of pocket expenses, emotional damages, pain and suffering, alienation, loss of confidence, loss of reputation, and other similar damages and harms, all to PLAINTIFF's great detriment.

146.     PLAINTIFF seeks attorney's fees under the Pennsylvania Human Relations Act.

147.     Alternatively, Defendants' actions were motivated by the foregoing discrimination and thus PLAINTIFF is entitled to attorney's fees under the mixed-motive theory of liability.

148.     Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' unlawful actions towards PLAINTIFF were intentional, willful, and made with reckless indifference to PLAINTIFF's protected civil rights under PHRA.

## COUNT VI
### Retaliation
**Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, *et. seq*.**
(***PLAINTIFF v. Defendants COLD SPARK MEDIA, INC. and COLDSPARK DIGITAL, INC.***)

149.     PLAINTIFF repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

150.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a civil, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

151.     Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the PLAINTIFF because of PLAINTIFF's opposition to the unlawful employment practices of PLAINTIFF's employer.

152.     Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' unlawful actions towards PLAINTIFF were intentional, willful, and made with reckless indifference to PLAINTIFF's protected civil rights under PHRA.

153.     PLAINTIFF seeks attorney's fees under the Pennsylvania Human Relations Act.

154.     Alternatively, Defendants' actions were motivated by the foregoing discrimination and thus PLAINTIFF is entitled to attorney's fees under the mixed-motive theory of liability.

155.     As a result of Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' violations of PHRA, PLAINTIFF has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VII**
**Aiding and Abetting**
**Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, *et. seq*.**
**(*PLAINTIFF v. Defendant RYAN REYNOLDS*)**

156.    PLAINTIFF repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

157.    PHRA § 955(e) provides that it shall be unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

158.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955, the discriminatory conduct.

159.    Defendant RYAN REYNOLDS' unlawful actions towards PLAINTIFF were intentional, willful, and made with reckless indifference to PLAINTIFF's protected civil rights under PHRA.

160.    PLAINTIFF seeks attorney's fees under the Pennsylvania Human Relations Act.

161.    Alternatively, Defendants' actions were motivated by the foregoing discrimination and thus PLAINTIFF is entitled to attorney's fees under the mixed-motive theory of liability.

162.    As a result of Defendant COLD SPARK MEDIA, Defendant COLDSPARK DIGITAL, and Defendant RYAN REYNOLDS' violations of PHRA, PLAINTIFF has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## JURY DEMAND

PLAINTIFF demands a jury trial on all issues to be tried.

## **DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to PLAINTIFF's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF MIRACLETTE PARISH demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, equitable damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems equitable, just, and proper.

Date: <u>July 9, 2024</u>

          **DEREK SMITH LAW GROUP, PLLC**
          By: *<u>/s/ Timothy J. Prol, Esq.</u>*
          Timothy J. Prol, Esq.
          1628 Pine Street
          Philadelphia, Pennsylvania 19103
          Phone: (215) 391-4790
          tim@dereksmithlaw.com
          *Attorneys for Plaintiff, Miraclette Parish*